# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSICA E. GREGGS, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2:13-cv-33 |
| | ) |
| v. | ) Judge Mark R. Hornak |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

## I. INTRODUCTION

Plaintiff, Jessica E. Greggs, brought this action pursuant to 42 U.S.C. § 405(g) and 1383(c), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") that denied her application for supplemental security income ("SSI") /disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401-403; 1381-1383(f). Cross-motions for summary judgment have been filed. The Motion of the Commissioner will be granted, and that of Plaintiff denied.

## II. BACKGROUND

### A. Facts

Plaintiff was born on October 23, 1987. (R. 129). She completed high school and some vocational training in the culinary arts, *id.* at 211-12, and has worked as an assembly laborer in

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, succeeding former Commissioner Michael J. Astrue. Social Security History - Social Security Commissioners, http://www.ssa.gov/history/commissioners.html (last visited on June 25, 2014). As a result, Acting Commissioner Colvin is now the official-capacity defendant in this action. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); Fed. R. Civ. P. 25(d).

manufacturing, as a dishwasher and cook, and as a restaurant hostess, *id.* at 205. The record reflects that Plaintiff has not engaged in substantial gainful work activity since January of 2008. *Id.*

B. **Procedural History**

Plaintiff filed an application for DIB on March 30, 2009, (R. 129, 200), and an application for SSI on April 9, 2010, *id.* at 136, alleging disability due to a left knee injury and depression, with an alleged onset date of January 29, 2008, *id.* at 204. The state agency denied Plaintiff's claims on October 30, 2009. *Id.* at 76. An administrative hearing was held on March 15, 2011, before Administrative Law Judge Douglas Cohen ("ALJ"). *Id.* at 31. Plaintiff was represented by counsel and testified at the hearing. *Id.* at 32. Plaintiff's mother, Carol Greggs, and George Starosta, an impartial vocational expert ("VE"), also testified at the hearing. *Id.* at 31, 56, 65.

On April 28, 2011, the ALJ rendered a decision unfavorable to Plaintiff, finding that Plaintiff had the severe impairments of a left knee injury, a back disorder, and a mood disorder, but determined that these impairments did not meet or medically equal a listed impairment. *Id.* 12-15. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light exertional activity allowing for no more than two (2) hours of standing and walking in an eight (8) hour work day, with an option to sit or stand at will. *Id.* at 15. The ALJ also found that Plaintiff could occasionally climb ramps and stairs, as well as balance, stoop, and crouch, but could never crawl or kneel. *Id.*

Plaintiff was further limited to "simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few workplace changes," and "occupations not involving high levels of stress, i.e.,

those requiring independent decision-making or occupations subject to close supervision or close interaction with coworkers or the general public." *Id.* Given that the VE confirmed that the national economy contained significant numbers of jobs that comported with these limitations and were appropriate to Plaintiff's age, educational background, and work history, *id.* at 66-67, the ALJ concluded that Plaintiff was not "disabled" within the meaning of the Act, *id.* at 23.

The ALJ's decision became the final decision of the Commissioner on November 27, 2012, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ. *Id.* at 1-5. On January 10, 2013, Plaintiff filed her Complaint in this Court, seeking judicial review of the decision of the ALJ. The parties have filed cross-motions for summary judgment. Plaintiff contends that the ALJ erred in failing to properly assess valid medical evidence of record. Pl.'s Br. in Supp. of Summ. J. ("Pl.'s Br."), ECF No. 11, at 5. The Commissioner contends that the decision of the ALJ should be affirmed as it is supported by substantial evidence. The Court agrees with the Commissioner and will therefore grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

### III. LEGAL ANALYSIS

#### A. Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g); 1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol.*

*Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798, 800 (3d Cir. 2010).

In situations where a claimant files concurrent applications for SSI and DIB, courts have consistently addressed the issue of a claimant's disability in terms of meeting a single disability standard under the Act. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d. Cir. 2002) ("This test [whether a person is disabled for purposes of qualifying for SSI] is the same as that for determining whether a person is disabled for purposes of receiving social security disability benefits [DIB]. *Compare* 20 C.F.R. § 416.920 *with* § 404.1520."); *Sullivan v. Zebley*, 493 U.S. 521, 525 n.3 (1990) (holding that regulations implementing the Title II [DIB] standard, and those implementing the Title XVI [SSI] standard are the same in all relevant aspects.); *Morales v. Apfel*, 225 F.3d 310, 315-16 (3d. Cir. 2000) (stating claimants' burden of proving disability is the same for both DIB and SSI).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and (5) if not, whether he or she can perform other work. *See* 20 C.F.R. § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in

4

any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1). This may be done in two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. pt. 404, subpt. P, app. 1, *see Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Newell*, 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or,

(2) in the event that the claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy," *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes the claimant from returning to his or her former job. *Newell*, 347 F.3d at 545-46; *Jones*, 364 F.3d at 503. Once it is shown that the claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given the claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell*, 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns*, 312 F.3d at 119.

Where a claimant has multiple impairments that may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Comm'r of*

5

*Soc. Sec.*, 577 F.3d 500, 502 (3d Cir. 2009); 42 U.S.C. § 423(d)(2)(B) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the fifth step of the sequential evaluation process after considering Plaintiff's age, education, work experience, residual functional capacity, and the VE's testimony, and concluding that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

B. **Discussion**

As set forth in the Act and applicable case law, this Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

Plaintiff in essence contends (1) that the ALJ's RFC assessment (and as a result, his conclusion that Plaintiff could secure employment in particular jobs within the limitations of her RFC capacity) failed to consider certain record medical evidence that would preclude Plaintiff from securing gainful employment, Pl.'s Br. at 3; (2) that the ALJ set forth insufficient reasons for rejecting Plaintiff's testimony as not being entirely credible, *id.* at 14; and (3) that the ALJ more or less "substituted his opinion for that of treating physicians," which is just cause for remand, *id.* at 11; *see Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("[b]y

6

independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician"). Thus, in Plaintiff's estimation, the ALJ's decision that Plaintiff is not entitled to disability benefits is not supported by substantial evidence.

Generally, a treating physician's opinion is given more weight than the opinions of medical personnel who have had limited contact with the claimant. *See* 20 C.F.R. § 404.1527(c); 416.927(c); *Jones v. Sullivan*, 954 F.2d 125, 128-29 (3d Cir. 1991) ("in the absence of contradictory medical evidence, an ALJ in a social security disability case must accept the medical judgment of a treating physician"). As a result, "[w]here a report of a treating physician conflicts with that of a consulting physician, the ALJ must explain on the record the reasons for rejecting the opinion of the treating physician." *Allen v. Bowen*, 881 F.2d 37, 41 (3d Cir. 1989). And, if no medical evidence refutes the treating physician's opinion, the ALJ is bound by that opinion. *Id.* at 42. An ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his own credibility judgments, speculation, or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (internal quotation omitted).

As for a claimant's subjective complaints of pain, our Court of Appeals has explained, "(1) that subjective complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence; (2) that subjective pain may support a claim for disability benefits, and may be disabling; (3) that where such complaints are supported by medical evidence, they should be given great weight; and (4) that where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence." *Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984) (internal citations and quotations omitted). Ultimately, making credibility determinations is the province

7

of the ALJ and such determinations should only be disturbed on review if the ALJ's determinations are not supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

Here, Plaintiff claims that the ALJ disregarded the opinions of Plaintiff's treating physicians Dr. Jurenovich (for her knee pain) and Dr. Patel (for her depression), as well as the consultive psychological evaluation of Dr. Uran, without citing sufficient medical evidence to dispute those opinions, and substituted his opinion for those medical opinions. Pl.'s Br. at 10-11. After reviewing Dr. Jurenovich's April 2010 opinion on Plaintiff's ability to perform work-related physical activities, the ALJ concluded that Dr. Jurenovich's opinion – that Plaintiff could only sometimes lift and carry ten pounds, could only stand and walk for one hour, and required restrictions around heights, moving machinery, and vibration – was to be rejected, "as it is entirely inconsistent with his 'nearly normal' physical examination findings and unremarkable MRI results." (R. 19). In particular, the ALJ observed that Dr. Jurenovich's January and March 2010 treatment notes reveal that Plaintiff "complained of pain in her left knee, 'despite a nearly normal exam,'" and that at those appointments, Plaintiff did not need assistance with ambulation. *Id.* at 18.

After detailing their respective medical evaluations and findings, the ALJ underscored that Plaintiff's initial treating orthopedic surgeon, Dr. Scullin, Plaintiff's subsequent treating physician Dr. Paxson, and Dr. Thomas, who performed two Independent Medical Evaluations on Plaintiff, all "have determined that the claimant is capable of performing sedentary work," and explained that the ALJ "affords these opinions great weight in this assessment, as they are consistent with each other and consistent with the residual functional capacity determined herein." *Id.* at 16, 17, 19. This Court concludes that the ALJ sufficiently explained "on the

8

record the reasons for rejecting the opinion of the treating physician [Dr. Jurenovich]," *Allen*, 881 F.2d at 41, and cited to the appropriate medical evidence that, in the ALJ's estimation after reviewing the record, refuted Dr. Jurenovich's opinion, *see id.* at 42.

As for the ALJ's rejection of Dr. Patel's December 2010 opinion, the ALJ explained that Dr. Patel's assessment that Plaintiff "has marked restriction in activities of daily living, as well as repeated episodes of decompensation of extended duration"[2] was "wholly inconsistent with [his] notes of the claimant's treatment, which reveal that she was initially evaluated with a GAF[3] of 70, and no subsequent changes to the claimant's medication or diagnosis occurred thereafter to support his findings of marked restriction in activities of daily living . . . [and] repeated episodes of decompensation." (R. 20).

Regarding Plaintiff's subsequent consultative psychological evaluation with Dr. Uran, after which Dr. Uran assessed Plaintiff "with a GAF of 45, indicating serious symptoms or any

---

[2] To satisfy the requirements for "repeated episodes of decompensation, each of extended duration," a claimant must demonstrate:

> Exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

*Gibson v. Colvin*, 2013 WL 4778794, at *15–16 (W.D. Pa. 2013) (citing 20 C.F.R. § 404, subpt. P, app. 1, Listing 12.00(C)(4)).

[3] The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social, and occupational functioning, with a score of 1 being the lowest and a score of 100 being the highest; a GAF in the 61-70 range indicates only some mild symptoms, or some difficulty in social, occupational, or school functioning, but generally functioning pretty well and having some meaningful interpersonal relationships. *Diagnostic and Statistical Manual of Mental Disorders*, 32-35 (4th ed. 1994).

serious impairment in social, occupational, or school functioning," the ALJ explained that he "afforded this opinion little weight in this assessment because the symptoms the claimant reported to Dr. Uran were not reported to any of her treating physicians," and in April 2010, "one (1) month prior to this evaluation, Dr. Patel assessed the claimant with a GAF of 70." *Id.* at 21.

While the absence of any medical evidence to refute a physician's opinion is, by itself, an insufficient reason to reject that opinion, *see Allen*, 881 F.2d at 42, the ALJ also pointed to the April 2010 GAF assessment of Dr. Patel as being "contradictory medical evidence," *see Morales*, 225 F.3d at 317-18, with no explanation "to account for such a drastic decrease in the claimant's level of functioning in such a short period," (R. 21); *see also Bracciodieta-Nelson v. Comm'r of Soc. Sec.*, 782 F. Supp. 2d 152, 165 (W.D. Pa. 2011) (citing *Gilroy v. Astrue*, 351 Fed. Appx. 714, 716 (3d Cir. 2009)) (a GAF score need not even be discussed when the assigning physician made no specific limitations findings or otherwise failed to explain the basis for the score). As with the ALJ's rejection of the opinion of Dr. Jurenovich, this Court concludes that the ALJ sufficiently explained on the record the reasons for rejecting the opinions of the treating physician Dr. Patel and the consulting physician Dr. Uran, and in doing so, cited to sufficient relevant medical evidence that, in the ALJ's estimation after reviewing the record, refuted those opinions, *see Allen*, 881 F.2d at 42.

This Court also concludes that the ALJ set forth sufficient reasons for rejecting Plaintiff's testimony about the extent of her knee pain as not being entirely credible. With regard to the *Green* factors listed above, the ALJ concluded that Plaintiff's credibility faltered at the fourth factor: whether Plaintiff's testimony as to her pain was reasonably supported by medical evidence. (R. 21); *see Green*, 749 F.2d at 1068. To the ALJ, "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms;

however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.* The ALJ then specified that "in addition to the evidence of the claimant's symptom exaggeration and possible malingering,[4] there is also evidence that the claimant has not been entirely compliant in taking prescribed medications, which further suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application." *Id.*

The ALJ cited to the June 2008 Independent Medical Evaluation of Dr. Thomas, who concluded that although Plaintiff sustained a left knee injury consistent with a contusion and mild ACL sprain, her complaints were "markedly out of proportion to her objective findings," *id.* at 738, a conclusion that Dr. Thomas maintained even after updating his report to account for a bone scan in his second Independent Medical Examination of Plaintiff in September of 2009, *id.* at 740. The ALJ also based his assessment of Plaintiff's credibility on the medical assessment of Dr. Saad, whom Plaintiff sought out at the Cleveland Clinic's Pain Management Center for treatment of her knee pain. *Id.* at 583. Dr. Saad diagnosed Plaintiff with psychogenic disorder[5] and questionable malingering, and based his disagreement with Plaintiff's doctors' diagnosis of reflex sympathetic dystrophy[6] on the fact that Plaintiff's lower left extremity pain had no response to a previous lumbar sympathetic block and no objective findings on exam. *Id.* at 585.

---

[4] "Malingering" is defined as "[f]eigning illness or disability to escape work, excite sympathy, or gain compensation." STEDMAN'S MEDICAL DICTIONARY 1147 (28th ed. 2006).

[5] "Psychogenic pain disorder" is defined as "a disorder in which the principal complaint is pain that is out of proportion to objective findings and that is related to psychological factors." STEDMAN'S MEDICAL DICTIONARY 570 (28th ed. 2006).

[6] "Reflex sympathetic dystrophy," also known as "complex regional pain syndrome," is defined as "diffuse persistent pain usually in an extremity often associated with vasomotor disturbances, trophic changes, and limitation

11

Finally, the ALJ cited to the January 2009 notes of Dr. Quintero, with whom Plaintiff started treatment in 2008 for pain management, which revealed that Plaintiff's urine drug screen showed no evidence of Vicodin in her system, despite her receiving a refill for that prescription at her previous two appointments, suggesting that Plaintiff's symptoms may not have been as limiting as Plaintiff alleged. *Id.* at 17. This Court concludes that the ALJ cited to sufficient contradictory record medical evidence to warrant questioning the credibility of Plaintiff's complaints of pain, and does not find the medical evidence set forth by the ALJ as "speculative and immaterial."[7]

## IV. CONCLUSION

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges that Plaintiff faces in seeking gainful employment. However, based on the foregoing and the applicable standards of review, the ALJ engaged in sufficient discussion of the factual record to provide substantial evidence in support of his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act. For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

---

or immobility of joints; frequently follows some local injury." STEDMAN'S MEDICAL DICTIONARY 1895 (28th ed. 2006).

[7] Plaintiff contends that the ALJ improperly relied on the nature of Plaintiff's activities of daily living (as Plaintiff characterized them in her testimony) in coming to the conclusion that Plaintiff was not disabled, given that Plaintiff's "sporadic" activity does not disprove her alleged disability. Pl.'s Br. at 14 (citing *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981). However, *Smith* is readily distinguishable from this case because the claimant in *Smith* testified that he had gone hunting and shopping on only two occasions during the previous Fall. *See Smith*, 637 F.2d at 971. In contrast, as the ALJ noted, Plaintiff testified that she drives a half hour every other day to see her fiancé (in contrast with her mother's testimony that Plaintiff drives 15 to 20 minutes once a week to see her fiancé), (R. 45), drives short distances to Wal-Mart, *id.* at 48, leaves the house about 12 times per month, *id.*, does not use crutches, *id.*, and only about one to four times a month is Plaintiff entirely incapable of leaving the house because of either physical pain or emotional difficulties, *id.* at 50-51. In sum, in this Court's judgment, Plaintiff's activities cannot be characterized as sporadic. *See Carnes v. Comm'r of Soc. Sec.*, 2008 WL 4810771, at *5-6 (W.D. Pa. Nov. 4, 2008).

An appropriate Order will follow.

_____
Mark R. Hornak
United States District Judge

Dated: June 26, 2014
cc: All counsel of record